UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVD JOSE PEREZ YEPEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:26-cv-00113-JAW |
| ) | |
| DERRICK STAMPER, *in his* ) | |
| *official capacity as Chief Patrol* ) | |
| *Agent of Houlton Sector, U.S. Border* ) | |
| *Patrol*, et al., ) | |
| ) | |
| Respondents. ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order enjoining the respondents from denying the petitioner access to counsel or removing the petitioner from the District of Maine until the court issues its ruling on the pending order to show cause.

**I.   BACKGROUND**

On March 4, 2026, David Jose Perez Yepez filed an unverified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against his removal from the District of Maine and to ensure his access to counsel pending his habeas proceedings. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1); *Emer. Mot. for TRO to Stop Transfer Without Prior Consent* (ECF No. 3) (*Mot. for TRO*). On March 6, 2026, Mr. Yepez filed a verified

version of his March 4, 2026 petition for writ of habeas corpus. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 11) (*Pet.*).[1]

Mr. Yepez, a resident of Maine, is a Venezuelan citizen who fled to the United States in June 2024 after experiencing violence and political persecution in his home country. *Pet.* ¶¶ 1, 14-15, 26. On June 10, 2024, Mr. Yepez attended a U.S. Customs and Border Protection (CBP) One appointment and stated his intention to seek asylum, upon which CBP granted him parole pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.* ¶¶ 16-18, 21; Attach. 2, *Atty. Decl.*; Attach. 4, *1-94 Admission Record*. That same day, CBP initiated removal proceedings against Mr. Yepez and issued him a notice to appear, instructing him to appear before an Immigration Judge on October 14, 2025 in Orlando, Florida. *Id.* ¶ 19-20; Attach. 3, *Notice to Appear*. Mr. Yepez's October 14, 2025 hearing in Orlando, Florida was postponed, and he is currently scheduled for a hearing on June 1, 2027. *Id.* ¶ 25-26. Mr. Yepez maintains his parole set no conditions requiring assurances he would appear at his hearings. *Id.* ¶ 22. Upon entry into the United States, Mr. Yepez moved to Tampa, Florida before later relocating to Skowhegan, Maine where his brother-in-law lives. *Id.* ¶ 23. On February 10, 2025, Mr. Yepez filed an application for asylum due to his fear of kidnapping and violence from the Venezuelan government. *Id.* ¶ 24; Attach. 5, *Asylum Application*. On February 25, 2026, CBP agents arrested Mr. Yepez on his way to work. *Id.* ¶ 29. He remains in CBP custody in Fort Fairfield, Maine. *Id.* ¶ 34; *Min. Entry* (ECF No. 10).

---

[1] The Court relies on the facts as provided in Mr. Yepez's March 6, 2026 verified petition.

Mr. Yepez alleges his detention violates the Immigration Nationality Act and his due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 39-77; *Mot. for TRO* at 2-5.  He seeks a TRO enjoining his transfer from the District of Maine pending his habeas proceedings against Derrick Stamper, in his official capacity as Chief Patrol Agent for the Houlton Sector of U.S. Border Patrol, Rodney Scott, in his official capacity as Commissioner of CBP, David Wesling, in his official capacity as Director for the Boston ICE Field Office, Todd Lyons, in his official capacity as Acting Director of ICE, Kristi Noem, in her official capacity as Secretary of DHS, Sirce Owen, in her official capacity as Acting Director of the Executive Office for Immigration Review, and Pamela J. Bondi, in her official capacity as U.S. Attorney General.  *Pet.*  ¶¶ 6-13; *Mot. for TRO* at 1-5.  Mr. Yepez's requested TRO also seeks an order requiring Respondents to provide him reasonable access to counsel.  *Mot. for TRO* at 1-5.  His petition seeks, among other remedies, a writ of habeas corpus ordering his immediate release or, in the alternative, an order requiring an Immigration Judge to provide him with a bond hearing as soon as possible.  *Pet.* at 12.

## II.     LEGAL STANDARD

The standard for issuing a TRO is the same as for a preliminary injunction and is provided by traditional equity doctrines.  *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942, at 37; *Alcom,*

*LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 U.S. Dist. LEXIS 79863, at *15 (D. Me. May 6, 2020) (collecting cases).

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

### III. DISCUSSION

At the teleconference of counsel on March 6, 2026, Respondents conceded that a TRO ensuring Mr. Yepez's access to counsel and against Mr. Yepez's removal from the District of Maine should issue at this time. *Min. Entry*. In conceding the

propriety of the issuance of a TRO, Respondents have implicitly admitted that the Court may conclude that the Petitioner has proven each of the four factors essential for the issuance of a TRO.  The Court accepts Respondents' concession.

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  Here, the "irremediable" injury would be removal from this Court's jurisdiction pending the Court's resolution of its order to show cause.  Accordingly, the Court circumscribes its remedy, at this time, to ensure Mr. Yepez's access to counsel and to prevent Respondents from removing Mr. Yepez from the District of Maine until the Court issues its ruling on the pending order to show cause.

## IV.    BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  FED. R. CIV. P. 65(c).  The First Circuit has explained "[t]he purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring)

("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security"). Here, to comply with the mandatory nature of the bond requirement, the Court requires Mr. Yepez to post a bond of $100 within 48 hours of the issuance of this Order pursuant to Federal Rule of Civil Procedure 65(c).

## V. CONCLUSION

The Court ORDERS Respondents in this matter are hereby ENJOINED from removing David Jose Perez Yepez from the District of Maine until this Court issues its ruling on the pending order to show cause in this matter. The Court further ORDERS Respondents in this matter to provide Mr. Yepez reasonable access to counsel during his period of detention.

SO ORDERED.

                                                     /s/ John A. Woodcock, Jr.
                                                   JOHN A. WOODCOCK, JR.
                                                   UNITED STATES DISTRICT JUDGE

Dated this 6th day of March, 2026